## Case No. 1,636.

### BOODY et al. v. UNITED STATES.

[1 Woodb. & M. 150.] [1]

Circuit Court, D. Maine. May Term, 1846.

POSTOFFICE—PRINCIPAL AND SURETY—PAYMENT—APPLICATION.

1. A deputy postmaster is the agent of the postmaster-general. And though the latter is not by law liable for the misconduct of the former, he can employ him as agent to keep safely the money collected by himself, or other deputies near, and his sureties are liable on his official bond to the extent of its penalty for any neglect by the deputy as such agent.

2. The sureties are liable for his noncompliance with subsequent as well as past laws or orders, till his official term expires, if the orders be such as are justified by law.

[Cited in U. S. v. Gaussen, Case No. 15,192; U. S. v. McCartney, 1 Fed. 107.]

3. Where a balance became due from such a deputy, July 20, 1836, after the expiration of the previous quarter, and a payment was made as large as all of it, but $8.34, on the 12th day of the same month, and a second bond was not taken till the 16th of the same month, the presumption is, that the payment was to be applied on the balance due under the first bond, and that the money did not come from accruing receipts under the second appointment, being much larger than their ordinary amount.

4. A payment is to be applied to the oldest debt, if the debtor gives no directions; and it must be proved, that the payment came from receipts, accruing under a second bond, if that is relied on against the propriety of applying it to any balance whatever, still due under a prior bond.

[Cited in Whetmore v. Murdock, Case No. 17,510.]

5. The act of 1836 [5 Stat. 80], c. 270, § 1, requiring the revenue of the postoffice department to be paid into the treasury, does not require each payment to be carried in by a separate warrant, but they may be carried in quarterly by large "covering warrants."

This was a writ of error by the plaintiffs [H. H. Boody and others] on a judgment ren-

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

dered in the district court, September term, 1841, in favor of the United States, against the present plaintiffs, as sureties on three official bonds, for Thomas Todd, as postmaster of Portland. [Affirmed.]

The whole case, as agreed upon by the counsel, and as disposed of in the district court, is annexed, and forms a part of the record. Agreed statement of facts:

This is an action of debt, wherein plaintiff declares in three several counts against the defendants jointly on three several bonds—one dated December 15th, 1834; one dated July 16th, 1836; and one dated January 9th, 1837. Said Boody and Nutter were the only sureties on each bond. Todd, one of the defendants, makes no appearance, and is defaulted. The other defendants appear, and plead non est factum to each count, and file a brief statement, by leave of court, and according to the practice of the state courts, alleging that they, in one bond, which was a joint and several bond, and not a joint bond only, bearing date as set forth in plaintiff's first count, became the sureties of said Todd for his faithful discharge of the duties of the office of postmaster in Portland, to which office he had been appointed—and makes his commission, which bears date December 15th, 1834, a part of their brief statement: and further allege, that said commission expired on the 2d July, 1836, and with it expired the operation of said bond, in consequence of a new appointment and a new commission of said Todd, bearing date on the day last mentioned—this second commission is also made a part of the said defendant's brief statement. They further allege, that during said period of the operation of said first bond and commission, to wit, from December 15th, 1834, to July 2d, 1836, the aggregate of said Todd's indebtedness to, or receipts of money, in said office, for the government, was $11,502.67—and his credits or payments, on the same account, were $10,302.72—leaving a default of $1,199.94 under said appointment and bond: and that for said default no suit was instituted, within two years next succeeding the accruing thereof, by the plaintiff, against said sureties, and by reason thereof they were forever exonerated from liability for the same.

In further answer to the plaintiff's second count, and the bond therein declared on, said defendants, Boody and Nutter, allege, that they gave a joint and several bond, and not a joint bond, with said Todd, bearing date July 16th, 1836, and as his sureties for the faithful discharge of the duties by said Todd, in the office aforesaid, to which he had been appointed as set forth in the before named second bond and commission, and that said bond was superseded and rendered of no continuous effect, by the substitution of a new bond, dated the 9th day of January, 1837, for said preceding bond—and that during the operation of said preceding

bond, to wit, from July 16th, 1836, to January 9th, 1837, said Todd's indebtedness to, or receipts in said office, for the plaintiff, amounted to $3,973.50—and that his credits, or payments, on the same account, were $3,599.01—being a default under said bond of $375.49; and that for said default no suit was instituted against said defendant's sureties, within two years next succeeding the accruing of the same; whereby they were forever, and absolutely released from liability therefor to the plaintiff.

In further answer to the plaintiff's third count, and to the bond therein declared on, said defendants, Boody and Nutter, allege, that they gave a joint and several bond, and not a joint bond, with, and as the sureties of, said Todd, bearing date January 9th, 1837, for the faithful discharge of the duties of said office of postmaster, to which said Todd had been appointed—and that from said date until said Todd's removal from said office, to wit, September 21st, 1839, said Todd's indebtedness to the government, or receipts of money in said office, were $16,517.93—and his credits, or payments, on the same account, were $16,621.71—showing an excess of credits, or payments, of $103.78; and that for sundry receipts of said Todd, certified in the account of the postoffice department, by the auditor thereof, to wit:

Under date of December 18, 1837, for money received by said Todd of U. S. Marshal ..................... $   52 41
March 1, 1838, for money received of postmaster at Bath........... 976 30
January 4, 1838, for money rec'd of postmaster at Bridgton.......... 34 36
June 2, 1838, for money received of U. S. district attorney........... 72 83
October 3, 1838, for money received of postmaster at New Gloucester.. 20 52
October 26, 1838, for money received of postmaster at Upper Yarmouth.. 2 14
February 21, 1839, of same........ 2 05
January 5, 1839, for fine received of U. S. Dist. Attorney............. 5 00

Amounting in the aggregate to.. $1,165 61

the said Boody and Nutter are in no wise responsible according to the true intendment of their bond, because said receipts of money did not appertain to, and were not received on account of the duties of said office of postmaster; nor by virtue of any agency authorized by law—but were paid to the said Todd in violation of law. The before named certified account of the auditor of the postoffice department was referred to, and made a part of said defendant's brief statement, in confirmation of the allegation above specified.

The writ bears date June 1st, 1840.

The counsel for the plaintiff, United States district attorney, introduced the deposition of Allen Macrea, to prove the existence and loss of the two first bonds; also a bond, dated as set forth in the third count, executed by said Todd, Boody and Nutter, and joint and several in its provisions. To this testimony, the counsel for the defendants ob-

jected, on the ground of its variance from the several bonds declared on; they being joint bonds, and not joint and several bonds. But the court overruled the objection, and received said evidence.

The plaintiff's counsel next introduced the deposition of Elisha Whittlesey, auditor of the postoffice department, which proves a part of the case, and may be referred to, accordingly.

The plaintiff's counsel then introduced Peter G. Washington, who testified that he had been a clerk, in the postoffice department at Washington, since September, 1836; that it is the practice of postmasters to render quarterly accounts to the department; that it had been the practice, as long as he had been in the department, for the department to draw balances due from postmasters into the hands of other postmasters; that there was a necessity for it frequently, when a postmaster goes out of office, that he should pay the amount in his hands over to his successor in office, or to some postmaster whom the department should designate; that the new system of keeping the accounts of the department, described in Whittlesey's deposition, commenced under the new postoffice law of 1836; that the account C, in said deposition, is copy of a book of deposits made by the postmaster in a bank—the date of the deposit is derived from the date of the certificate that is forwarded from the cashier of the bank by the depositing postmaster, according to a general rule of the department, which provides as follows:

"Every postmaster, who is so directed, will deposit the proceeds of his office in the bank designated by the assistant postmaster-general, and take duplicate certificates of each deposit, signed by the proper officer of the bank, one of which should be transmitted to the department by the first mail thereafter, as the postmaster will not be entitled to a credit therefor until its reception at the department. The cashier of the bank in which the deposit is made, should be required by the postmaster, to make the entry of the sum deposited, to the credit of the 'postoffice department,' with the name of the postmaster, and the name of the office and state. Every postmaster who is directed to deposit, will, when the proceeds of his office does not amount to six hundred dollars in one quarter, deposit his whole quarterly balance within fifteen days after the close of each quarter. When the quarterly balance exceeds the rate of six hundred dollars per quarter, he will make his deposit monthly, within seven days after the close of each month: and when the quarterly balance exceeds the rate of three thousand dollars per quarter, he will make his deposit weekly—the proceeds of each month being paid within the succeeding seven days—and the whole quarter's balance being always paid, within fifteen days, after the close of each quarter."

Witness never knew of any general regulations, or instruction of the department, making any one or more postmasters the depositors of any other postmaster's receipts, or of the balances due from them; that when such receipts or balances are paid to, or deposited with another postmaster, it is under a special instruction for the particular case; and such was the manner of the several payments made to Todd, in the items making up the $1,165.61. Witness testified that when Todd, or any other postmaster, had paid money to a bank, or to any other postmaster as depository, pursuant to instructions, the postmaster so paying was considered as discharged for so much, and the bank, or depository, thenceforward was deemed alone accountable to the department for the amount —it was considered as payment into the treasury of the department. Witness testified that in May, 1837, on the suspension of the banks to pay specie, a general circular was addressed to the postmasters, by the postmaster-general, directing them thenceforth to keep their own deposits, and not to deposit in banks; that under this circular Todd ceased to deposit monthly in a bank, and made no deposit of the receipts of his office, and made no payments to the department, except on special drafts or orders of the department in favor of particular individuals. The transcript from the postoffice department, and the bonds and conditions thereof, to be made part of the case; and it appeared also, by the papers annexed to Mr. Whittlesey's deposition, that directions were given by the postoffice department, to make the payments to Todd, which he has credited as agent of the postoffice department, viz, $1,-165.61. It appeared by the auditor's statement, that between the 2d and 16th of July, 1836, viz., the 12th July, that said Todd paid $1,190.60; that the said second bond had been destroyed by fire, and that the third was consequently required; that the whole default of Todd was $2,637.26—and it was contended that by the statement of the accounts and operation of law, that this sum all became due within two years. The plaintiff's counsel moved to amend the counts in the declaration so as to describe the bonds as joint and several, but it was adjudged by the court to be unnecessary.

The evidence having closed, the attorney for the plaintiff waived the claim for the recovery under either of the first two counts, or first two bonds declared on—and claimed to recover the general balance certified by the auditor, and deduced from the accounts arising under all the bonds, as the balance arising under the last or third bond, declared on in the third count, being $2,637.26, with interest.

The defendants' counsel moved, 1st. To instruct the jury generally, that it was competent for them to find the several results stated in the brief statement above, filed by the defendants; if satisfied, from the facts in the case, that such finding would be just and equitable between the parties.

2dly. That, inasmuch as when the last, as well as the preceding bonds were entered into by the defendants, the rule or regulation of the department, existing with the obligatory force of a statute law, respecting the duties and liabilities of Todd to pay the receipts of his office to the department, required such payments to be made by him monthly into a depository bank, selected by the department for the purpose, and to cause such payments to be certified to the department by the cashier of such bank, and operating to discharge both said Todd and his sureties, the defendants, from accountability, pro tanto, monthly; and inasmuch as by the general circular of the postmaster-general, in May, 1837, the postmaster-general repealed said rule, or regulation, and directed the said Todd to retain to himself, as his own depositor, the monthly balances of his office, instead of discharging himself therefrom, and not only made him the permanent depository of his own receipts, as postmaster, but also of the receipts or revenue of other postmasters—thereby augmenting materially the responsibilities of his office, to the prejudice of his sureties, and altering the substantive obligations, and removing the conservative provisions of the sureties of Todd, as the same existed under the general rules and regulations of the postoffice department at the time the bonds were executed—should the jury be satisfied, that, in consequence of this alteration of the duties of Todd, and of the liabilities of his sureties, any of the defaults charged in the writ had been occasioned, the defendants, as sureties, should be exonerated wholly therefrom, under the last bond—or, if not wholly, then to the extent of any losses occasioned by, or which the jury should be satisfied were imputable to, this change, or repeal, and new arrangement of deposits, in the regulations of the postoffice department; and that it was competent for the jury to pass upon and determine, as a question of fact, the actual effect, in this case, of the general order of the postmaster-general, issued in May, 1837, and find for the defendants, to the extent that they were satisfied the same had operated to enlarge the defendants' undertakings, or exposed them to onerous risks, not within the contemplation of the parties at the time of the execution of the bonds.

3dly. That the transfer of funds from other postmasters to Todd, for no purpose, except to make Todd the depository thereof, until needed by the department, was a violation of the intent and provisions of the first, third and fourth sections of the act of congress of July 2d, 1836 [5 Stat. 80], reorganizing the postoffice department; and for transfers or deposits thus illegally made, the defendants, as sureties for Todd, were in no wise liable; and that the several items constituting the $1,165.61 before mentioned,

were of this nature. That statutory bonds must be construed strictly under the law authorizing them, and that the law of March 3d, 1825, § 3, under which the bonds in question were given, limited the operation of such bonds to duties, and embraced only the obligations, which should arise under, or be incident to, the execution of such laws and regulations of the postoffice department, as were in their nature and design general, applicable to the officers of the whole government, and of uniform requirement—and would not cover special, local and temporary instructions, designed to be executed by a single officer only, or bear upon a single postoffice to meet a particular emergency—and that inasmuch as the several receipts by Todd, making the $1,165.61, were under instructions of the latter character, and not such as could have been contemplated under any law, general instructions, or rule of the postoffice department, existing at the time the bond was executed, the sureties of Todd were not responsible for them, but they should be regarded as acts done outside of the conditions of the bond.

4thly. That the bond cannot be made to operate retrospectively, to cover defaults accruing prior to the date of it; and that sureties under a new bond cannot be made responsible for moneys received by their principal prior to the date of their bond, though retained by him subsequently—and that each set of sureties is entitled to be credited with the payments made from funds derived under their respective bonds—to effectuate which, it is competent for the jury to inquire and determine the derivation of the respective payments involved, and apply them to discharge their appropriate bonds, according to equity and good faith between all parties concerned—that in the present case each preceding bond terminated in its operation by the institution of its successor; and if the jury could be satisfied that the payments made by Todd under the respective bonds, were derived from the operations of his office, during the continuance of the particular bond in force when such payments were made, they should make the application accordingly; leaving a deficit, if any, to attach to the bond, under which it thus in fact accrued. That the law requires the application of the payments to be made to the oldest obligation, when no special direction is given by the paying party, or in case of running accounts, to the oldest item, and to each succeeding one in its turn. But that this rule is subject to qualification when different parties, or different sets of sureties, upon distinct obligations, are interested, and when this is the case, then the application is to follow the equity of the interest involved, having regard to the right of each party under each obligation; if the jury are satisfied that the payments are not made from any fund which each set of sureties have more specific interest in than another set,

or are satisfied that these payments were made from the principal's private funds, then the interposition of the rule of applying such payments to the oldest debt, would not be any infraction upon the rights of sureties on the subsequent debt; but if satisfied that these payments were made from a specific fund arising from the operations of the obligations, entered into by a particular set of sureties, and if the payments were from funds of a mixed character, in which the jury could discover equal or unequal interests of different sets of sureties, the application should be divided and apportioned to them respectively, according to the inequality. if any, of such different sets of sureties, the paramount rule of the law, being in all cases, to make the application in each case, according to the equity of the particular case, to which end it is made competent for each party to go into evidence of the time, origin, and mode of each payment.

5thly. That the act of July 2d, 1836 [5 Stat. 88], c. 270, § 37, establishes the application of payments contrary to the general rules above specified, only in the particular case to which it relates, viz.: only between the different sureties of the same postmaster, acting under the same commission, and where the new set of sureties are called in on account of the specified insufficiency of the first set; that in such case the new set, having notice of a prior unsatisfied debt, from the circumstances of their own undertaking, may rightfully be regarded as assenting to the application of each subsequent payment to such prior debt, if they omit to cause a contrary application to be directed by their principal; that this distinguishes such cases from the case of a new bond, under a new commission, or required avowedly to replace a former one which had been destroyed—that in each of the latter cases, no notice, expressed or implied, is conveyed to the new sureties, of the existence of a prior debt unsatisfied, against which it is incumbent on them to protect the proceeds of their obligations in behalf of their principal, if they do not elect to have such prior debt satisfied out of such proceeds at their risk—and further, that said 37th section of the last named act, should be regarded by the jury as a legislative construction, which negatives the authority of the jury to make an application of the acknowledged proceeds of a subsequent bond, to extinguish the unsatisfied obligations of a prior bond, except in the particular cases specified in said section; and that the general rule of enforcing the application of payments, in the absence of instructions by the payor at the time, according to the equity of the particular case as found in the facts proved, different obligations being involved, should be considered as established legislatively, as well as in accordance with the dictates of justice, by this statutory exception.

6thly. That by the provisions of the 18th

section of the before named act of July 2d, 1836 [5 Stat. 83], all prior accounts and liabilities were intended by congress to be separated from, and adjusted independently of, all subsequent operations of the department; and the necessity of new appointments, commissions, and bonds, for postmasters, created by said act, could not, per se, operate, nor reasonably be regarded, as notice to sureties of prior outstanding debts against the principals—the obvious purpose and policy of said law being to free the operations of the postoffice department, from that date, of all prior defaults growing out of the prior defects or imbecile administration of the laws of the department; and that, therefore, it was competent for the jury to separate all payments subsequently made, from all debts or defaults of Todd previously incurred; and that, by operation of the limitation act, for such prior debts or defaults, Todd's sureties could not be made liable in this action.

But the court instructed the jury, that the order of the postmaster-general of May, 1837, by which Todd was directed to retain the money which he collected in his own hands, instead of depositing in a bank, as had been before required, did not exonerate his sureties from their responsibility—but that they continued liable for his defaults, after that order, to the same extent that they were before: That the account between Todd and the general postoffice being an open and running account, all payments made by him from time to time, in the absence of any specific appropriation by him at the time of making them, were by law appropriated to the payment and extinction of the oldest charges on the debit side of the account; that this was the general rule of law with respect to the appropriation of payments upon an open and running account, when no special appropriation was made, either by the debtor or creditor, at the time the payment was made, to any particular item of the account; that the proviso in the 37th section of the act of July, 1836 [5 Stat. 88], c. 270, which directed that payments made subsequent to the execution of a new bond, by a deputy postmaster, shall first be applied to the discharge of any balance which may be due on the old bond, unless when the debtor specially directs it to be applied to his new account, at the time of the payment—is not limited to the cases where a new bond is required at the request of the sureties, in order to be released from their suretyship—but extends to all cases where a new bond is required by the postmaster-general, or he shall deem it necessary, for any cause, to require a new bond: That the sum of $1,165.61, which was received by Todd from other postmasters, under orders from the postmaster-general directing the same to be deposited in his hands, was covered by that clause in his bond, which required him to account for all moneys, bills, bonds, notes. receipts, and other vouchers,

which he, as agent of the general postoffice, should receive for the use and benefit of the general postoffice; that the order of the postmaster-general, directing him to receive and hold these moneys for the United States, was authorized by the 3d section of the act of March 3, 1836 [5 Stat. 80], c. 270; and that his sureties were responsible for his default in not paying over and accounting for the same, as they are for his not accounting for the money received in the ordinary discharge of his duties as postmaster.

The jury accordingly returned a verdict for the sum of $2,637.26, and interest amounting to $192.50, making a total of $2,829.76: all which, as said defendants allege, is erroneous—and that a verdict should have been in their favor.

The exceptions to the rulings of the judge below were argued at this term, in writing.

F. O. J. Smith, for plaintiffs in error.

A. Harris, Dist. Atty., for the United States.

WOODBURY, Circuit Justice. The first exception taken to the ruling of the district court, is the instruction to the jury, "that the order of the postmaster-general of May, 1837, by which Todd was directed to retain the money which he collected in his own hands, instead of depositing it in a bank, as had been before required, did not exonerate his sureties from their responsibility— but that they continued liable for his defaults, after that order, to the same extent that they were before." It is sufficient to remark on this, that the condition of the bond, signed by the plaintiffs in error, is, that "the said Thomas Todd shall well and truly execute the duties of the said office according to law and the instructions of the postmaster-general." The only exceptions, which can be raised to this instruction, under that condition, are two. The first one is, that this order was issued after the date of all the bonds, and that the condition does not apply to subsequent orders. But there are no words, limiting its application to past orders; and, in the nature and reason of the case, it should not be limited to past orders any more than to past laws. The object is to preserve obedience, and uniformity, and harmony among that class of officers; and hence, orders given,—whether after or before the bond—are general, and require a strict compliance, till the whole term of office of the postmaster expires. The term of office is the limitation during which the orders may be issued; else both obedience and uniformity, and all improvement in former orders or regulations, by experience or discoveries, are defeated, as to all old postmasters under their existing bonds. It follows, also, that if new laws can be passed, and must be obeyed, and the sureties held, if passed during the continuance of the term of office. new orders may be, when the language in

the condition, applicable to both, is the same; and furthermore, that a new law, however great an improvement, would, in many respects, become inefficient and unequal, and not uniform in its operation, if the postmaster-general could not issue a new order, directing the details of its execution, which his deputies were bound to obey, and their sureties held responsible for. Congress have expressly authorized the postmaster-general to issue such orders, and to make suitable regulations. it being impossible to legislate with sufficient minuteness for every thing in such a department, more than in the army or navy. Act 1825 [4 Stat. 102], c. 64, § 1. In all these, however, the orders issued must, of course, not be in conflict with any law. And hence, the other exception, which can be made in some cases with success, is made here, and is next to be considered. It is, that the new order is one contrary to law.

It is undoubtedly true, that the condition, requiring obedience to orders of the postmaster-general, cannot exact it to orders not justified by the acts of congress. But I can see no illegality in this order to the deputy, to retain the money collected, till drawn for by the postmaster-general, rather than to deposit it in banks. These last at that time had ceased to pay out specie, and had forfeited their situation as public depositories. Under the fiscal system of the United States, all collecting officers and their sureties are responsible, and ever have been, for the money they officially receive, till it is paid over to public creditors on some order from the treasurer, or paid to some other officer having the control over their receipts. And whether that order be to deposit it periodically with some bank or receiver-general, or be to pay it out on particular drafts, where no public depository exists by law, or the sums collected are too small for requiring a deposit of them for safety, is immaterial under the language of the bond and the spirit of the financial system which then prevailed. The sureties agree to be responsible for his fidelity in these and other matters, according to the current and changing laws of congress and the legal orders of the postmaster-general under them, during the whole of the official term, and to the amount of the penalty in the bond. Their security is, they are liable only to that amount, however much the collections in the hands of their principal may accumulate, or his other receipts as agent of the department, exceed the penalty.

The second exception is to the instruction, "That the account between Todd and the general postoffice being an open and running account, all payments made by him from time to time, in the absence of any specific appropriation by him at the time of making them, were by law appropriated to the payment and extinction of the oldest charges on the debit side of the account;

that this was the general rule of law with respect to the appropriation of payments upon an open and running account, when no special appropriation was made, either by the debtor or creditor, at the time the payment was made, to any particular item of the account; that the proviso in the 37th section of the act of July, 1836 [5 Stat. 88], c. 270, which directed that payments made subsequent to the execution of a new bond, by a deputy postmaster, shall first be applied to the discharge of any balance which may be due on the old bond, unless when the debtor specially directs it to be applied to his new account, at the time of the payment—is not limited to the cases where a new bond is required at the request of the sureties, in order to be released from their suretyship—but extends to all cases where a new bond is required by the postmaster-general, or he shall deem it necessary, for any cause, to require a new bond." The correctness of this instruction is not material to the plaintiffs, who were sureties in all the three bonds, given in behalf of Todd, and who are of course liable for all the balances, except in one respect. They might avail themselves of the statute of limitations as to the balances that were due on the first two bonds, if they have not been since legally discharged. Act 1825 [4 Stat. 103], c. 64, § 3. The limitation is two years from and after any default, and this action was brought June 1st, 1840, while the first commission and bond expired, July 2d, 1836, and the second bond, January 9th, 1837, both more than two years before suit. The third commission and bond terminated September 21st, 1839, not two years before suit. On a careful comparison of dates, however, the objection to the instruction on this point is not very material as to the balance due, July 2d, 1836, because before the second bond was given, viz., on the 12th of July, 1836, a payment was made by Todd, which reduced that balance to only $8.34. It is objected that this payment may have been made on the second bond. But this payment could not in any view be regarded as made under or upon the second bond, as that bond was not in existence till four days after, viz., the 16th of July, 1836. As a further evidence, that this payment must have been made on account of the former balance, under the first bond, the quarter had just ended on the first of July, and he owed nothing to the department, except on that balance, till the 1st of August; after which, any thing due before and from the month of July, probably he paid on the 8th of August, as $350 were then paid; and after August had expired he paid for that month, probably, $400, as that sum was then paid. It would hardly answer to presume, that on the 12th of July he was paying money, not intended to be on account of what was already due, but in advance of what was not due, and of what he afterwards appears to have paid in

a different manner, when it became due. Nor is there any evidence that this payment, on the 12th of July was made, from accruing receipts, under the second bond or commission, so as to bring it within the case of Eckford hereafter examined, nor is there any such presumption, but rather the reverse, as the second bond had not been in existence, and the amount being $1.191.CO, was much larger than the usual receipts since the second appointment.

In relation to the second balance, it is to be sure much larger, being $1,567, and deserves more consideration. It would be barred by the limitation of two years, from the 9th of January, 1837, the date of the third bond, if it had not been extinguished by the subsequent payments, which were applicable to it. They are so applicable by the express words of the 37th section of the act of 1836 [5 Stat. 88], c. 270, even under its limited construction, as reaching only cases of new bonds given within the official term—this bond being a new one given within that term. The case of U. S. v. Eckford's Ex'rs, 1 How. [42 U. S.] 250, is not like this; because in that case no express provision of law existed, requiring, as here, subsequent payments to be applied under a preceding bond, where no direction to the contrary was given by the debtor. And if the $8.34 should also be held to be extinguished by force of subsequent payments on the general and equitable principle at common law, that the payments of a debtor, where no specific direction is given by him at the time, shall be applied to the oldest debts, it would not conflict with the Case of Eckford, unless it appeared that this sum and all these subsequent payments were made from subsequent and accruing receipts, about which there is no evidence in the cause. Other cases hold, that the creditor has his election, and may apply the payment before suit to any debt he pleases, where a special statute or the debtor gives no direction how to apply it. 1 Mer. 606; 2 Strange, 1194; 14 East, 239; 5 Taunt. 596; Postmaster General v. Norvell [Case No. 11,310]; 1 McLean, 497 [Myers v. U. S., Case No. 9,996]; U. S. v. Kirkpatrick, 9 Wheat. [22 U. S.] 720.

The general principle in favor of an application of the payment to the oldest debt, where nothing has been done or directed, seems too well settled to be overturned by straining the case of Eckford beyond the facts proved here, and for only the sum of $8.34. 1 Ld. Raym. 287; Peake, 64; Mayor of Alexandria v. Patten, 4 Cranch [8 U. S.] 317; Field v. Holland, 6 Cranch [10 U. S.] 8, 27; Postmaster General v. Furber [Case No. 11,308]; [U. S. v. Eckford's Ex'rs] 1 How. [42 U. S.] 250; Gratiot v. U. S., 15 Pet. [40 U. S.] 336; Devaynes v. Noble, 1 Mer. 606. A rule in accordance with this principle existed under the civil law. Dig. B. 46, tit. 3, § 5. For if neither the creditor nor the debtor applies the payment, nor a special statute, the law ought to do it, and, as a general rule, to the oldest debt. Myers v. U. S. [Case No. 9,996]. Either of the above rules would decide this point in favor of the United States. It is true, that some exceptions exist to these principles; but I do not think that any of them include the present case. See some in [U. S. v. Eckford's Ex'rs] 1 How. [42 U. S.] 250, and 5 Mason, 85 [U. S. v. Wardwell, Case No. 16,640]; U. S. v. January, 7 Cranch [11 U. S.] 572; Gilp. 126 [Postmaster General v. Norvell, Case No. 11,310]; [Farrar v. U. S.] 5 Pet. [30 U. S.] 373.

The test of the exception, in the case of different bonds and commissions, is, that money actually collected and accruing under one, cannot be applied to the other without the consent of all concerned. Myers v. U. S. [Case No. 9,996]. But here there is no evidence whatever, that the small balance due after the 12th of July, or the payment then made, was from money accruing under the second appointment. Indeed, as before shown, the presumption is evident that it could not be, as it was so much larger than the ordinary receipts during only twelve days. Nor do I mean by this conclusion to impugn the case of U. S. v. Giles, 9 Cranch [13 U. S.] 212, any more than the case of U. S. v. Eckford's Ex'rs [1 How. (42 U. S.) 250], because the former decision holds merely that the sureties in each official bond are liable only for defaults happening within the term each covers. And the whole inquiry, as to the correctness of this second instruction, is founded entirely on the idea, that such a principle is applicable here, though the sureties in all the bonds are the same. U. S. v. Kirpatrick, 9 Wheat. [22 U. S.] 720. And I give the sureties the benefit of it, in order that they may avoid the balance due under each bond by the statute of limitations, if it has not been paid or discharged since, in conformity to sound legal principles and the provision of the act of congress specially referring to a part of it. This is treating sureties liberally, as the cases require (Miller v. Stewart, 9 Wheat. [22 U. S.] 680), though I think that the law in many cases has been construed quite beyond any reasonable intention of its makers or of parties to contracts, from a natural sympathy in their behalf.

The third and last exception is to the instruction—"That the sum of $1,165.61, which was received by Todd from other postmasters, under orders from the postmaster-general directing the same to be deposited in his hands, was covered by that clause in his bond, which required him to account for all moneys, bills, bonds, notes, receipts, and other vouchers, which he, as agent of the general postoffice, should receive for the use and benefit of the general postoffice; that the order of the postmaster-general, directing him to receive and hold these moneys for the

United States, was authorized by the 3d section of the act of March 3, 1836 [5 Stat. 80], c. 270; and that his sureties were responsible for his default in not paying over and accounting for the same, as they are for his not accounting for the money received in the ordinary discharge of his duties as postmaster." It is to be remembered, that the postmasters in different cities or towns are in fact and in law deputies, or agents of the postmaster-general. It was once contended, that he on that account was liable for their default. But their agency being public, and the liabilities of each regulated by law without imposing such a responsibility over on him, he has not in such cases been made chargeable for their misfeasances. Thus it was held in the following cases, after much deliberation, that the postmaster-general is not liable personally or officially for the neglect or wrong of a deputy or of a letter or mail carrier. Whitfield v. Lord Le Despencer, Cowp. 754; Lane v. Cotton, 1 Ld. Raym. 646, 12 Mod. 472; 3 P. Wms. 394, note; Story, Bailm. § 461 et seq. They are still, however, his agents, and are liable to be called on as such to transact business for him, connected with his official duties. One of his duties is to collect and disburse the money received for postage, and to keep it safely till expended. Hence he can make his deputies agents for this purpose, within convenient limits; and the sureties, as in respect to the collections of each deputy at his own office, do not act in the dark or at random, as to their responsibilities, because they cannot be held liable beyond the amount of the penalty in their bond, and they knowingly and deliberately stipulate to be liable to the extent of that. Besides this, in the bond itself, the acting of postmasters as agents is thus recognized:— Said Todd "shall also faithfully do and perform, as agent for the general postoffice all such acts and things as may be required of him by the postmaster-general, and moreover shall faithfully account with the United States for all moneys, bills, bonds, notes, receipts, and other vouchers, which he as agent aforesaid shall receive for the use and benefit of said general postoffice." The act of 1836 [5 Stat. 79], c. 270, § 1, which requires the revenues and debts due to the postoffice department, to be paid into the treasury of the United States, and the money disbursed, to be drawn therefrom, does not refer to each individual collection or payment, but the aggregate quarterly and yearly collections and expenditures. This is, in order to make them appear on the exhibit of the annual receipts and expenditures of the country, and also in the annual appropriations, which was not the case formerly. This is effected by large "covering warrants," quarterly or otherwise, and not by a deposit and warrant in each individual case over the Union; else the labor and details would be insuperable, without a great additional force in the department. The collections, then, till disbursed, are kept as formerly by the postmaster-general with his deputies, or, when safe deposit banks exist, with them. The responsibility of depositing is usually small on this account, as the current demands of the deposit, being greater, or as great as the receipts, quickly and constantly absorb most of the receipts.

There are several other points, stated in argument, and at the trial. But as these alone were made at the time of the charge to the jury, and as the rulings or opinions concerning others, such as the accounts of Todd being all open and running, or the bond being joint, instead of joint and several, even if incorrect, do not reach and alter the merits of the case, as decided on other grounds, it is unnecessary to enlarge upon them. For the reasons I have given, let the judgment below be affirmed.