BISHOP *v.* STATE, EX REL. GRINER, PROSECUTING ATTORNEY.

[No. 18,352.    Filed January 4, 1898.]

CONSTITUTIONAL LAW. — *Construction of Constitution.* — Words or terms used in a constitution which is dependent upon a ratification by the people, must be interpreted in a sense most obvious to the common understanding at the time of its adoption. *p. 230.*

SAME.—*Lucrative Office.—Constitution Construed.*—The term "deputy postmaster," as used in section 9, article 2 of the constitution, which provides against the same person holding more than one lucrative office at the same time, was, by the framers of the constitution, understood and intended to mean the office of postmaster as now denominated. *pp. 226-231.*

SAME.—*Acceptance of Second Incompatible or Lucrative Office Forfeits First.*—Where the incumbent of a public office accepts and is inducted into a second office that is incompatible with the first, or where both are lucrative offices within the meaning of section 9, article 2 of the constitution, his subsequent resignation of the latter can in no manner serve to restore his right or title to the first office. *pp. 231-233.*

TOWNSHIP TRUSTEE.—*Lucrative Office.*—The office of township trustee is a lucrative office. *p. 232.*

PLEADING.—*Action to Oust Public Officer Who Accepts Second Lucrative Office.—Sufficiency of Information.*—An information, under section 1145, Burns' R. S. 1894, to oust defendant from the office of township trustee because he had been appointed to and had accepted the office of postmaster in violation of the provision of the constitution, must negative the exception made in favor of a postmaster whose annual compensation does not exceed ninety dollars. *pp. 234, 235.*

From the Jay Circuit Court.    *Reversed.*

*J. M. Smith* and *F. H. Snyder,* for appellant.

*W. A. Ketcham,* Attorney-General, *D. E. Griner* and *D. T. Taylor,* for appellee.

JORDAN, J.—This action was prosecuted in the lower court upon information in the name of the State, on the relation of the prosecuting attorney, for the purpose of ousting the appellant from the office of township trustee. A judgment of ouster was rendered,

from which appellant prosecutes this appeal. The errors assigned are: (1) That the court erred in overruling a demurrer to the information; (2) error in sustaining a demurrer to the answer.

The information charges, substantially, that the defendant, Peter L. Bishop, at the November election of 1894, was elected township trustee of Bear creek township, in Jay county, Indiana, for a term of four years, and that on the 6th day of August, 1895, he duly qualified as such trustee, and entered upon the discharge of the duties of the office; that subsequently, on the 9th day of October, 1896, the defendant was duly appointed and commissioned, by the postoffice department of the United States, postmaster at the village of Bryant, in said county of Jay, for a term of four years, and duly qualified as such postmaster at said time, and entered upon the discharge of the duties thereof, and from said day on has continued to hold said office of postmaster, and discharge the duties thereof. By reason of his accepting and entering upon the discharge of the duties of postmaster at Bryant, it is charged that he forfeited and surrendered the office of township trustee, and the prayer is that he be ousted therefrom. The State bases its right to expel appellant from the office in question on section nine of article two of the constitution, which is as follows:

"No person holding a lucrative office or appointment under the United States, or under this State, shall be eligible to a seat in the General Assembly; nor shall any person hold more than one lucrative office at the same time, except as by this constitution expressly permitted: *Provided,* that officers in the militia to which there is attached no annual salary, and the office of deputy postmaster, where the compensation does not exceed ninety dollars per annum, shall not be deemed lucrative; *And provided, also,* That coun-

ties containing less than one thousand polls may confer the office of clerk, recorder and auditor, or any two of said offices, upon the same person." Const. Section 9, Art. 2.

The contention of counsel for appellee is that appellant, by accepting the office of postmaster, when he was an incumbent of another lucrative office created by the laws of this State, violated the above provision of the constitution, prohibiting one from holding two lucrative offices; and it is claimed that by this unlawful act he *ipso facto* surrendered his right to longer hold the office of trustee, and the latter office thereby became vacant. This proposition counsel for appellant to an extent controvert, and they insist that the information is insufficient for its failure to negative the exception in section nine, *supra,* which provides that the office of deputy postmaster, where the compensation does not exceed ninety dollars per annum, shall not be deemed lucrative. Their insistence is that the pleading, upon any view of the case, must affirmatively disclose that the postoffice in question does not fall within this exception. Counsel in their brief say: "When our constitution was constructed and created, there was one 'general postoffice at Washington, D. C.,' and the Postmaster General was in charge and denominated 'postmaster,' and the different offices throughout the country were known, and, in fact, designated, as 'deputy postmasters' by the federal statute. This was true until 1876, when the postoffices were designated as first, second, third, and fourth class, and the lower class only are appointed by the Postmaster General. The others are appointed by the President. In this latter statute the word 'deputy' was dropped, and the offices classified as we have said."

VOL. 149—15

In support of their contention they argue that the term "deputy postmaster," as employed in the constitution, means and includes what is now generally denominated "postmaster," and if the State relies on the positive prohibition of the constitution, to oust appellant from the office of trustee, it must, at least, by proper averments show that the annual compensation of the postoffice accepted and held by him exceeded ninety dollars, and thereby place him beyond the exception. On the other hand, counsel for the State contend that the information is sufficient, and in support of their contention they say that at the time of the adoption of the constitution the various postoffices throughout the State were filled by officials denominated and known as "postmasters," and the term "deputy postmaster," as used in the constitution was understood and intended to apply only to a person who was an assistant or deputy of a local postmaster, and for whose acts the latter officer was liable. Therefore they contend that inasmuch as the appellant was a postmaster, and not a deputy postmaster, he in no manner can avail himself of the exception to the prohibition against holding at the same time more than one lucrative office.

We regret that counsel in this appeal have not given us the aid which they should, in our search for a solution of the controversy on the point involved. The inquiry, under the circumstances, is: What is the correct interpretation of the term "deputy postmaster" as employed in section nine of article two of the constitution? The precise question, so far as we have been able to ascertain, has not heretofore been considered by this court. In the cases of *Foltz* v. *Kerlin,* 105 Ind. 221, and *Wood* v. *State,* 130 Ind. 364, the interpretation of the term "deputy postmaster," as now involved, does not seem to have been presented nor considered.

In order to discover the true sense of the term in question, and thereby determine if the exception in controversy can be of any avail to the appellant in this action, we may properly examine the postal laws of the United States passed by Congress prior to the constitutional convention of 1850, which framed our present fundamental law, and learn from such acts if the term "deputy postmaster" was employed therein, and what duties were assigned to such officer. An inspection of the several acts of Congress relative to the postal affairs of the national government passed between the years 1789 and 1827 discloses that the term "deputy postmaster" was used therein, and in other acts subsequently passed, and that it was intended to, and did apply to the persons who were entrusted with the distribution of the United States mail at the various localities where it was delivered. The Postmaster General was considered the executive head of the postoffice department, and those who served under him at the various towns and cities throughout the country were considered his deputies. See 1 U. S, Stat. at Large, p. 733; 4 U. S. Stat. at Large, p. 298. By the act of July 2, 1836, the President was authorized, with the advice and consent of the Senate, to appoint a "deputy postmaster for each postoffice where the commissions allowed amounted $1,000.00 and over, for the year ending June 30, 1835. 5 U. S. Stat. at Large, p. 80. In the act of March 3, 1845, the term "deputy postmaster" is again used, and likewise in the act of March 1, 1847, wherein certain pay is directed to be allowed to "deputy postmasters" in lieu of commissions previously paid. 5 U. S. Stat. at Large, p. 732; 9 U. S. Stat. at Large, p. 147. By an act of March 3, 1847, the Postmaster General is directed to establish a postoffice at Astoria, Or., and appoint a "deputy postmaster" to discharge the duties thereof. 9 U. S.

Stat. at Large, pp. 189 and 200. By the act of March 3, 1851, the Postmaster General was directed to furnish stamps, etc., to all deputy postmasters. 9 U. S. Stat. at Large, p. 589. Section 6 of the act of March 3, 1853, provided certain regulations in regard to "deputy postmasters." 10 U. S. Stat., pp. 249 and 255. It is apparent, therefore, that the statutes of the United States, passed before and long after the adoption of our constitution, applied the term "deputy postmaster" to each and all persons who were incumbents of and discharged the duties of the postoffices established at the towns and cities throughout the nation. That these officials in a legal sense, to a certain extent, were each considered as the deputy to the Postmaster General, is evident. In fact, in many of the decisions of the federal courts, the term "deputy postmaster" was applied to a person filling a post-office, and such officer is said to be the deputy of the Postmaster General. *Boody* v. *United States*, 3 Fed. Cas. 860; *Postmaster General* v. *Early*, 12 Wheat. 135; *United States* v. *LeBaron*, 19 How. 73; *Ware* v. *United States*, 4 Wallace 617 and 625; *Postmaster General* v. *Furber*, 4 Mason 333, 19 Fed. Cas. 1098. Many other cases may be found to the same effect, but those to which we have referred will suffice for the purpose which we have in view.

Turning to the proceedings of the constitutional convention leading up to the framing and adoption of the section in controversy, and it appears that, after several propositions were made to exempt postmasters where the office did not exceed a certain annual compensation, from the term "lucrative office," the matter of holding more than one lucrative office at the same time, was finally referred to the committee on revision and phraseology, embodied in the following sections:

"Section 6. No person holding any lucrative office

or appointment under the United States or this State, shall be eligible to a seat in either branch of the Generaly Assembly: *Provided,* That offices in the militia, to which there is attached no annual salary, shall not be deemed lucrative."

"Section 1. , No person shall hold more than one lucrative office at the same time except as in this con- constitution expressly permitted: *Provided,* That counties containing less than one thousand polls may confer the office of clerk, and recorder and auditor, or any two of said offices upon one person: Provided, however, that the office of postmaster, where the compensation does not exceed ninety dollars per annum shall not be deemed lucrative."

This committee, after giving the question consideration, seems to have consolidated these sections, and prefixed the word "deputy" to postmaster, and incorporated the whole into section nine of article two of the constitution, in which form it was reported to the convention and finally adopted and ratified by the people. Convention Journal, pp. 166, 167, and 527 *et seq.* No reasonable doubt can exist but what the committee on phraseology considered the phrase "deputy postmaster" as the one technically correct and proper to be used, in view of the fact that the postal laws of the United States applied this term to the particular federal officer which the convention had under consideration, and which had been designated in the section referred to the committee as "postmaster." In the debates of the convention, on the question of making a person ineligible to hold more than one lucrative office the term "postmaster" was generally used. Mr. Owen, a member of the convention, speaking on the question in regard to excluding postmasters from holding offices created by the laws of the State, said: "I ask the gentlemen if there is a

single postmaster who receives but ninety dollars a year who is not obliged to do something else for a livelihood? * * * * It is not for the sake of the receipts of the office that the postmaster accepts the office, but for the accommodation of the neighborhood. It is wrong then, in my opinion, to deprive them of the right to be elected to the legislature." Debates on the Constitution, pp. 1423 and 1424. In the address to the people of the State, prepared by Mr. Owen, and unanimously concurred in by the convention, wherein, among other things, the principal changes made in the old constitution under the new one about to be submitted, were pointed out to the electors, is the following: "Postmasters, if their annual compensation be ninety dollars or less, but not otherwise, may be elected members of the legislature." Debates on the Constitution, p. 2042. This announcement or declaration to the electors of the State relative to the provisions of the constitution which was about to be submitted for their ratification, by the men who had just completed the work of moulding and giving it form, certainly must be accepted as revealing what was understood by the term "deputy postmaster," as used in the section in controversy, and the particular officer to which the term was intended to be applied. It is a rule generally asserted that words or terms used in a constitution which is dependent upon a ratification by the people must be interpreted in a sense most obvious to the common understanding at the time of its adoption, in the belief that such was the sense or meaning designed. Cooley, Const. Lim. (6th ed.), pp. 69, 73, 81. Guided by this principle, in the light of the contemporaneous facts and circumstances to which we have referred, and it is plain, we think, that the term in question, according to the common understanding of both those who framed and those who ratified our constitu-

tion, was understood and intended to mean the office of postmaster as now denominated, and consequently must be applied to such office. Therefore, if the annual salary or compensation of a postoffice in this State is not in excess of ninety dollars, in that event such office cannot be considered a lucrative one within the prohibition of section nine, *supra*. But, where such compensation exceeds ninety dollars, the office must be held to be lucrative; and, under the positive mandate of the constitution, the incumbent thereof is debarred from holding any other lucrative office created by the constitution or laws of this State. The settled rule of the common law prohibits an incumbent of a public office from holding a second one incompatible with the first, and the acceptance of the second office will, *ipso facto*, terminate his right or title to the first. The authorities affirm that the act of accepting, under such circumstances, the second office, operates as a surrender of the first; and when the officer has been once inducted, under his election or appointment, into the second office, his subsequent resignation of the latter can in no manner serve to restore his right or title to the first office, for it is evident that when a public office once becomes vacant, a former incumbent cannot be restored to it by his own act. *Yonkey* v. *State*, 27 Ind. 236; *Howard* v. *Shoemaker*, 35 Ind. 111; *Gosman* v. *State*, 106 Ind. 203, on p. 208, and authorities there cited; *State* v. *Bus*, 135 Mo. 325, 36 S. W. 636; *People* v. *Common Council*, 77 N. Y. 503, 33 Am. Rep. 659; *State* v. *Goff*, 15 R. I. 505, 9 Atl. 226; Mechem on Pub. Officers, sections 420, 425 and 426; Throop on Pub. Officers, sections 30 and 31; 19 Am. and Eng. Ency. of Law, p. 562u.

The question, however, with which we have to deal in this case, is not one relating to the holding of incompatible offices in defiance of the common law, but re-

lates to the holding of one incompatible with the inhibition of the constitution. The doctrine of the common law which we have mentioned, however, is in some respects applicable. The test to be applied is not whether the two offices held by the appellant are incompatible with each other, but are they lucrative ones within the meaning of the constitution. That, the office of township trustee is lucrative is settled beyond controversy. *Creighton* v. *Piper*, 14 Ind. 182; *Foltz* v. *Kerlin, supra.* If the annual compensation of the post office accepted and held by the appellant is over ninety dollars it is manifest that it falls within the constitutional interdiction, and appellant, by accepting it, at the time he was holding that of trustee, violated the fundamental law of the State, and his unlawful act in so doing would produce the same result or effect as does the acceptance by an officer of a second incompatible office under the rule of the common law to which we have heretofore referred. It could not be presumed that appellant intended to violate the constitution by accepting and holding the office of postmaster if it was beyond the exception in question, when he was the occupant of that of township trustee, and the result to be implied from his act in doing so, under such circumstances, would be that he intended completely to surrender and vacate the latter office, and the law would attribute such a surrender as the necessary consequences of the act. 19 Am. and Eng. Ency. of Law, p. 562b; Mechem on Public Officers, section 429; *Dickson* v. *People*, 17 Ill. 191; *State* v. *Buttz*, 9 S. C. 156; *In re Corliss*, 11 R. I. 638, 23 Am. Rep. 538; *State* v. *DeGress*, 53 Tex. 387; *Davenport* v. *Mayor*, 67 N. Y. 456; *Hoglan* v. *Carpenter*, 4 Bush. (Ky.) 89.

Assuming, therefore, that the annual compensation of the postoffice in controversy exceeds ninety dollars,

the act of the appellant in accepting it while the incumbent of the office of trustee, would operate as a surrender or resignation of the latter, and it would become vacant to the extent at least that the proper appointing authority could lawfully proceed to fill the vacancy. This rule, we think, is well affirmed by the authorities cited. *Gosman* v. *State, supra,* at p. 208; *Osborne* v. *State,* 128 Ind. 129.

But counsel for appellant urge in consideration of the fact that appellant subsequently resigned the office of postmaster, as alleged in his answer, consequently this action cannot be maintained. This contention is not tenable. As we have previously said, where the first office is once surrendered or vacated by accepting a second in defiance of law, the officer cannot be restored to any right or title under the first by resigning the second. Counsel refer us, however, upon this question to the cases of *Foltz* v. *Kerlin, supra,* and *DeTurk* v. *Commonwealth,* 129 Pa. St. 151, 18 Atl. 757, 5 L. R. A. 853. In both of these cases the party was holding the office of postmaster when he accepted and was inducted into the office created by the laws of the State. As the laws of the State could exert no dominion over a federal officer, as an officer, it was therefore said in the first case to be inconceivable, under such circumstances, that the acceptance of an office created by the State could operate to vacate one held under the statutes of the United States. In *Foltz* v. *Kerlin, supra,* Elliott, J., intimated that the incumbent of a post office when installed into that of township trustee, might surrender the office of postmaster and retain that of trustee, but expressly said that both could not be held in defiance of the constitution. In the appeal of *DeTurk* v. *Commonwealth, supra,* in view of the fact that the officer was postmaster at the time he accepted the office of commissioner, under the laws

of the commonwealth of Pennsylvania, it was held
that he might resign the former and retain the latter.
The facts in these two cases, it will be seen, were just
the reverse of those in the case at bar. The question
as here presented does not in any manner involve the
right of the courts of the State to oust the occupant of
a federal office, for in this respect it must be conceded
they are utterly powerless. Their right, however, to
pass upon the title to an office of one who claims to
hold it under the laws of their own jurisdiction, and
expel him therefrom, whenever he has vacated it by
his act of accepting a federal office, great or small, in
violation of the state's constitution, cannot be success-
fully controverted. Likewise, a state court has the
power, as held in the Foltz case, to oust one from an
office existing under state laws, when at the time he
accepted and was installed into the latter, he was also
the incumbent of an office under the authority of the
United States, and insists, under such circumstances,
in holding both in defiance of the state's constitution.

Having reached the conclusions expressed on the
foregoing propositions, we may next proceed to con-
sider and determine the ultimate question: Is the in-
formation sufficient, in the absence of any averments,
to show that the compensation of the post office in con-
troversy exceeds ninety dollars per annum? We are
of the opinion that this question must be answered in
the negative. The action is apparently instituted
under the second subdivision of section 1145, Burns'
R. S. 1894 (1131, R. S. 1881), which provides that: "An
information may be filed, etc., whenever any public
officer shall have done or suffered any act which, by
the provisions of law shall work a foreefiture of his
office." The information under this provision of the
code must state facts sufficient to show clearly a for-
feiture of the office in controversy. *Chambers* v. *State*,
127 Ind. 365, 11 L. R. A. 613.

We have seen that the act upon which the State relies to operate as a forfeiture of the office in dispute was the acceptance by the appellant of a second lucrative office, that of postmaster, contrary to the provisions of the constitution. But, as we have heretofore said, section nine of article two, which forbids the holding of more than one lucrative office, also makes an exception in favor of a postmaster where the compensation of his office is not in excess of ninety dollars per annum. In the absence of any averment to the contrary, a court would be compelled to presume that the office in question was within the exception reserved by the constitution. We are not authorized to presume that the positive command of the law has been violated by appellant, and that he must therefore be subjected to a judgment of ouster. At least, as a matter of pleading, the plaintiff was required to negative the exception made in favor of a postmaster whose annual compensation does not exceed ninety dollars. *Brutton* v. *State*, 4 Ind. 601, 602; *Shearer* v. *State*, 7 Blackf. 99; *Howe* v. *State*, 10 Ind. 423; *State* v. *Carpenter*, 20 Ind. 219; *Wiley* v. *State*, 52 Ind. 516; *Burke* v. *State*, 52 Ind. 522; *State* v. *Buckner*, 52 Ind. 278; *Meier* v. *State*, 57 Ind. 386; *Henderson* v. *State*, 60 Ind. 296; *O'Brien* v. *State*, 63 Ind. 242; *Stevenson* v. *State*, 65 Ind. 409; Wharton's Crim. Law (7th ed.), section 614; Wharton's Crim. Pl. and Pr. (9th ed.), section 238 *et seq.*; Wharton's Crim. Ev. (9th ed.), section 128; High on Extr. Rem., section 591; Bliss on Code Pl., section 202 *et seq.*; 1 Greenl. Ev. (13th ed.), section 79 and note; 1 Chitty Pl. (1867), 224; Gould's Pl., chap. 4, section 22; Shipman Pl., p. 33; Steph. Pl. (Heard's ed.), p. 443.

From the small population of the town of Bryant, as disclosed by the last federal census, it may be inferred that its post office belongs to the fourth class, the an-

nual compensation of which, under the postal laws, seems to be fixed and adjusted quarterly by the post office department, and depends, to an extent, on the amount of business done at the office.

For the reason pointed out, the information must be held to be insufficient, and the court therefore erred in overruling the demurrer thereto. The answer of the appellant, which set up his resignation of the post office in question, was no defense to the action, and the demurrer to it was properly sustained.

The judgment is reversed, and the cause remanded to the lower court, with instructions to sustain the demurrer to the information, with leave to amend, and for further proceedings in accord with this opinion.