HIDAY *v.* STATE OF INDIANA EX REL. SNYDER.

[No. 9,230. Filed March 27, 1917.]

1. OFFICERS.—*Acceptance of Incompatible Office.—Effect.*—The acceptance by a public officer of an office incompatible with that already held *ipso facto* vacates the first, and the officer may not abandon the second, though an inferior office, and resume the other. p. 163.

2. JUSTICES OF THE PEACE.—*De Facto Acts.—Notice.*—Where, in a bastardy proceeding before a justice of the peace, defendant in his special appearance made objection to the jurisdiction of the justice that he "is not now and for many years last past has not been a duly elected, qualified and acting justice of the peace," the knowledge thus brought to the attention of the relatrix was not sufficient to change the *de facto* character of the justice's acts, although he had previously accepted the incompatible office of deputy township assessor. p. 165.

3. JUSTICES OF THE PEACE.—*De Facto Officer.—Holding Office Under Color of Law.—Acceptance of Incompatible Office.*— Where a justice of the peace held and exercised his office under color of title of election, he was, as to the public and third persons in a proceeding before him, an officer *de facto*, even though he had subsequent to his election accepted the incompatible office of deputy township assessor. p. 166.

From Hancock Circuit Court; *Joseph Collier*, Special Judge.

Action by the State of Indiana, on the relation of Iva Rettie Snyder, against Benjamin H. Hiday. From a judgment for relatrix, the defendant appeals. *Affirmed.*

*Thomas E. Glascock* and *Omer S. Jackson,* for appellant.

*S. A. Wray* and *Tindall & Tindall,* for appellee.

IBACH, P. J.—This was a bastardy proceeding under §§1013-1034 Burns 1914, §§978-999 R. S. 1881. On March 9, 1908, the relatrix made complaint before Vinton S. Smith, a justice of the peace of Center township, Hancock county, Indiana, charging appellant with being the father of her child. Such further proceedings were had before such justice of the peace that appellant was adjudged the father, and recognized to appear in the Hancock Circuit Court where a transcript of the proceedings was filed.

Appellant, appearing specially in the circuit court, filed an answer to the jurisdiction of such court over the subject-matter and over his person. Such answer alleged, in substance, that appellant was never tried before a justice of the peace on said charge; that on October 23, 1914, he was required to appear before Vinton A. Smith, who was not at such time a justice of the peace and before whom appellant appeared specially; that Vinton A. Smith was, on March 1, 1914, duly appointed and qualified as deputy township assessor in and for Center township, Hancock county, Indiana, and by reason of which appointment he did assess as such deputy assessor many property holders living in said township since that date; that at the time of such appointment and qualification he claimed the title of justice of the peace in and for said township and for many years prior thereto held himself out to be a justice of the peace in and for said township; that he was elected justice of the peace on the . . . . . . day of

. . . . . . . ., 1897, for a four-year term; that he was again re-elected but failed to qualify; notwithstanding such failure he, from time to time, assumed the duties of justice of the peace from such date up to the time of his appointment and qualification as deputy township assessor; that upon his appointment and qualification as deputy assessor all power and authority as justice of the peace ceased, and the right to such office ended; that the two offices are each incompatible with the other; that on October 23, 1914, Smith represented himself to be a justice of the peace of Center township and at such time and place impersonated such officer by calling court and having a trial and holding to bail the appellant over his objections, all without authority.

In appellant's special appearance before Vinton A. Smith the objection to jurisdiction was: "That the said Vinton A. Smith is not now and for many years last past has not been a duly elected, qualified and acting justice of the peace in and for Center township, Hancock county, State of Indiana, in which township said cause of action is now pending as aforesaid for trial."

Appellee demurred to such answer for want of facts upon the following grounds: "1. The answer shows that Vinton A. Smith, before whom the preliminary hearing was had was a *de facto* justice of the peace and was acting as a justice of the peace under color of authority. 2. The answer attempts to question the jurisdiction of the court by a collateral attack upon the jurisdiction of the said Vinton A. Smith, to act in the capacity of a justice of the peace at the time of the aforesaid preliminary hearing, which jurisdiction may not be questioned in a collateral proceeding such as this, but only by a direct action for the purpose of trying his title to such office of justice of peace." The demurrer was sustained and appellant refused to plead

over. There was a jury trial, verdict and judgment for appellee and against appellant. Appellant's motion in arrest of judgment, based on substantially the same grounds as his answer, was also overruled. Each of said rulings is assigned as error and relied on for reversal.

The controlling question presented by this appeal is whether or not Vinton A. Smith was an officer *de facto* on October 23, 1914, when the preliminary hearing was held and appellant bound over to the circuit court. It therefore becomes material to inquire, What is an officer *de facto?*

In a leading case, *State* v. *Carroll* (1871), 38 Conn. 449, 471, 472, 9 Am. Rep. 409, after an elaborate review of many decisions, it is said: "An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the office were exercised. First, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be. Second, under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like. Third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public. Fourth, under color of an election or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such. Anything less compre-

hensive and discriminating will, I think, be imperfect and deceptive as a definition."

In the same case it is also said: "The *de facto* doctrine was introduced into the law as a matter of policy and necessity, to protect the interests of the public and individuals, where those interests were involved in the official acts of persons exercising the duties of an office, without being lawful officers. It was seen, as was said in *Knowles* v. *Luce* (Moore 109) that the public could not reasonably be compelled to inquire into the title of an officer, nor he compelled to show a title, and these became settled principles in the law. But to protect those who dealt with such officers when apparent incumbents of offices under such apparent circumstances of reputation or color as would lead men to suppose they were legal officers, the law validated their acts as to the public and third persons, on the ground that, as to them, although not officers *de jure,* they were officers in fact, whose acts public policy required should be considered valid. It was not because of any quality or character conferred upon the officer, or attached to him by reason of any defective election or appointment, but a name or character given to his acts by the law, for the purpose of validating them."

Appellant contends that the acceptance of the office of deputy township assessor *ipso facto* vacated the office of justice of the peace and that the judgment rendered by Smith was void, and cites *Bishop* v. *State, ex rel.* (1897), 149 Ind. 223, 231, 48 N. E. 1038, 39 L. R. A. 278, 63 Am. St. 279, and *Wells* v. *State,* ex rel. (1910), 175 Ind. 380, 386, 94 N. E. 321, Ann. Cas. 1913C 86, and other cases in support thereof. These cases state the principle, and correctly so we think, that the acceptance of an incompatible office *ipso facto* vacates the other and that such officer may not abandon the latter, although an inferior

office, and resume the other. Such cases are, however, easily distinguishable from the present case. The rights of the public or third persons were not there involved.

In *Case* v. *State, ex rel.* (1879), 69 Ind. 46, a case somewhat analogous to the one before us, the court said: "It is contended by the appellant, that the facts alleged in the second paragraph of answer show that Hutchins had ceased to be a resident of Pike county before the alleged breach of his bond had occurred; that, by ceasing to be a resident of Pike county, he abandoned and forfeited his office as constable, and that for a breach of his bond, which occurred afterwards, his sureties are not liable; but we think he was still a constable *de facto*, under color of office, and that his official acts were valid, and that for a breach of his official duty his sureties are liable. His right to the office could not be questioned collaterally; it could be done only in a direct proceeding for that purpose. Until such proceedings were had, and he was ousted of his office, or his term expired, his sureties would remain liable for his misfeasance in office." See, also, *Woodside* v. *Wagg* (1880), 71 Maine 207; Mechem, Public Officers §320; *Sheehan's Case* (1877), 122 Mass. 445, 23 Am. Rep. 374.

In *Sheehan's Case, supra,* the justice had accepted a seat in the legislature and it was contended that by accepting such office he vacated his office as special justice and that the commitment was therefore illegal. In the opinion of the court it is said: "If Mr. Hawkes, upon taking his seat in the House of Representatives, ceased to be a justice *de jure*, he was, by color of the commission which he still assumed to hold and act under, having the usual signs of judicial office—sitting in the court, using its seal, and attended by its clerk—and no other person having been appointed in his stead,

Hiday v. State, ex rel.—64 Ind. App. 159.

a justice *de facto*. Upon well-settled principles, it would be inconsistent with the convenience and security of the public, and with a due regard to the rights of one acting in an official capacity under the color of, and a belief in, lawful authority to do so, that the validity of his acts as a justice should be disputed, or the legal effect of his election and qualification as a representative be determined, in this proceeding to which he is not a party. The appropriate form of trying his right to exercise the office of a justice is by information in behalf of the Commonwealth, or perhaps by action against him by the person injured." In *Fowler* v. *Bebee* (1812), 9 Mass. 231, 234, 6 Am. Dec. 62, it is said: "Mr. Smith (whose acts were questioned) is no party to this record, nor can he be legally heard in the discussion of the plea; although our decision would as effectually decide on his title to the office, as if he were a party. This would be adjudging a man unheard, contrary to natural equity, and the policy of the law."

There is some contention on the part of appellant that, inasmuch as the attention of appellee was called to the fact, in the justice of the peace court, that

2. Smith was not a justice of the peace *de jure*, appellee should not now be entitled to the benefit of the *de facto* doctrine. The knowledge brought to the attention of appellee by the special appearance in the court of justice of the peace was not, in our opinion, sufficient to change the character of Smith's acts. *Mowbray* v. *State* (1882), 88 Ind. 324; *Parker* v. *State, ex rel.* (1893), 133 Ind. 178, 200, 32 N. E. 836, 33 N. E. 119; *State, ex rel.* v. *Crowe* (1897), 150 Ind. 455, 463, 50 N. E. 471. It was said in *Petersilea* v. *Stone* (1876), 119 Mass. 465, 467, 20 Am. Rep. 335: "The reason of public policy, upon which it is held that the acts of an officer *de facto* are not to be called in question collaterally, but are valid as to third persons, may apply even

to the case where such officer is a usurper and intruder."

 The answer admits that Smith was holding and exercising the office of justice of the peace under

3. color of title of election, and therefore as to the public and third persons he was an officer *de facto*.

 This disposes of all the questions properly presented. Judgment affirmed.

NOTE.—Reported in 115 N. E. 601. Officers: *de facto*, definition, 140 Am. St. 165; right to hold two offices at the same time, 2 Ann. Cas. 380, 10 Ann. Cas. 697, Ann. Cas. 1915A 525. See under (1) 29 Cyc 1401; (2, 3) 24 Cyc 405.