## PROVO CITY et al. v. CLAUDIN et al.

No. 5761. Decided December 29, 1936. (63 P. [2d] 570.)

Rehearing Denied March 6, 1937.

*Christenson, Straw & Christenson,* of Provo, for appellants.

*R. B. Holbrook* and *Brockbank & Pope,* all of Provo, and *Morris & Callister,* of Salt Lake City, for respondents.

WOLFE, Justice.

This is an appeal by defendants Claudin, on the judgment roll alone, from a decree enjoining them from operating a funeral home in residential district class "B" in Provo City, Utah. The word "defendants" hereinafter used will refer to the Claudins solely unless otherwise specified. There are assignments on various rulings along the way, including the overruling of defendants' demurrer to plaintiffs' amended complaint, the sustaining of plaintiffs' demurrer to defendants' second amended answer, refusing to grant a change of judge, and an order denying defendants' motion to set aside the decree and vacate the injunction. But the main questions revolve about the construction and interpretation to be given to section 820 of chapter 65 of the Revised Ordinances of Provo City, which reads as follows:

"Sec. 820. Uses, Residence District Class 'B.' In a residence district Class 'B,' no building or premises shall be used and no building shall be erected which is arranged, intended, or designed to be used for any other than one or more of the following specified uses: any use permitted in Residence District Class 'A,' amusement parks, apartment houses, bathing resorts, hospital not including hospital for the insane or veterinary hospital, hotel, keeping of chickens or rabbits not exceeding fifty in number, no part of the building or run which they occupy being less than fifty feet from any building; philanthropic

institutions, not including correctional, pleasure resorts, public semi-public buildings, public utility buildings that do not give offensive odors, noise, dust or fumes, not including central electric power stations, railroad passenger station, not including yard or sheds, reservoir or filter beds, retail store which must be in a dwelling and must not occupy more than twenty-five per cent of the floor space on the ground floor of the said dwelling, sanitarium, water tank."

The defendants claim that a proper construing of the section includes funeral homes, which as far as we are able to discern is a toned down name for mortuary. It is contended that the phrase "public semi-public buildings" includes mortuaries. We have difficulty in knowing what "public semi-public" means. Either the word "public" or the word "semi-public" should be eliminated, or both should, on the theory that this phrase can be given no meaning. Whichever of the three courses is adopted, it cannot help defendants. A funeral home is not a public nor a semi-public building within the meaning of this section. The section would not be likely to mention such uses as hospitals, hotels, philanthropic institutions, amusement parks, which are at least as semi-public as funeral homes, and fail specifically to mention funeral homes, if they were to be classed as semi-public. We do not think a funeral home is any more of a public purpose than a department store. The fact that, for reasons of public policy, morticians are given a preference out of the assets of an estate, does not make their business any the less a private business. Obtaining food and shelter are as important in their way as the proper burial of bodies in its way, yet food stores, hotels, and rented houses are not thought of as being public or semipublic uses. Whatever construction is put upon "public semi-public buildings," funeral homes were not meant to be included. If the phrase is altogether omitted because too ambiguous to give it meaning, the defendants' cause is not helped, for it appears that only such buildings or uses are permitted in class "B" residential district as are named in the section. All not permitted are prohibited. Thus falls defendants' argument that, if the

section is too ambiguous to have intelligent meaning, funeral homes must be allowed. If the whole section were so ambiguous that the intention of the city commission could not be ascertained, there might be tenability to defendants' argument.

Defendants maintain that, if the statute is so construed as not to permit the funeral home, the prohibition must be considered arbitrary, discriminatory, and unreasonable (a) because the defendants are operating on one of the principal streets of the city, where the majority of buildings are devoted to business uses and situated in what is really a business district and one more suited to business than residence purposes; (b) that two other mortuaries are operating in this class "B" residence district and started to do so since the ordinance became effective; (c) that defendants constructed their building at great cost, and, unless permitted to use it, will suffer considerable loss of investment; and (d) that the "funeral home" of defendants is used as a two-family home and the business conducted on said premises is a customary home occupation as authorized by the ordinance.

These four reasons are set out as affirmative allegations in defendants' second amended answer. The demurrer to this answer was sustained. This is assigned as error. At the time of the ruling the court allowed ten days "without notice" within which to amend. Defendants' counsel was present in court, but did not ask for further time. No amendment was filed within ten days, whereupon defendants' default was entered and, without notice to defendants and without their or their counsel's presence, testimony was taken on the part of plaintiffs and they were granted judgment. Findings of fact and a decree granting the injunction followed and a writ of injunction issued pursuant to the decree. Defendants assign error to the entering of defendants' default and all the steps which succeeded it above enumerated.

It will be seen that, if the demurrer to the answer was properly sustained on the theory that the latter did not in law state an answer, then there was no error in granting the default upon the theory that there was not a sufficient answer filed, unless the default was unseasonably granted because time for defendants to amend had not run. We shall first consider the substantive reason, to wit, that the affirmative allegations of the answer made an issue. It will be seen that reason (a) above is directed to a contention that the ordinance itself is unreasonable and discriminatory because it fails to put the locality where defendants have their mortuary in the commercial district. Reason (b) is directed to an alleged discriminatory administration of the ordinance, charging favoritism rather than intrinsic or inherent discrimination in the ordinance itself. Reason (d) above is so obviously without merit that we shall not discuss it. Reason (c) is accompanied by other allegations purporting to raise an estoppel against the city by reason of an alleged permit to remodel and remodeling of the building under the supervision of the building inspector, involving, without protest or complaint by the city or its officials, the expenditure of large sums of money. Plaintiffs in their reply brief state that this permit to remodel was one to remodel a dwelling as such and obtained after defendants were denied the right to construct and operate a funeral home, and that defendants, in defiance of the denial by the board of adjustment, caused the building under guise of a house remodeling to be remodeled and constructed for a mortuary. Since no evidence has come up with the record, we cannot accept this statement in plaintiffs' brief as a fact. For the purpose of testing the ruling on plaintiffs' demurrer to defendants' second amended answer, these facts endeavoring to set up an estoppel must be taken as true. But it appears that the board of adjustment denied the application to remodel as a funeral home. If we accept as true the allegations that the defendants obtained authority to remodel and did so under the supervision of the building

inspector, we have a situation where defendants admit obtaining a permit after the right to so build and operate had been denied them. Assuming that the employees of the city granted the permit and supervised the building, it was all knowingly without authority or right by defendants, granting that the board of adjustment was acting within its jurisdiction and its decision had not been overturned. An estoppel cannot be erected on such a foundation. We see no error therefore in holding that the affirmative allegation—designed as (c) above—did not constitute an answer.

Is it an answer to set up in this action that the ordinance is arbitrary, discriminatory, and unreasonable because it is claimed that the locality in which defendants have established their parlors is really commercial in nature and should be incuded in the commercial district? The answer sets up in paragraph (g) thereof the following:

"That heretofore, to-wit, in November, 1932, this defendant C. O. Claudin, made an application to establish a funeral home upon the premises described in plaintiffs' amended complaint, to the Board of Adjustment in and for Provo City as provided in the ordinance referred to in plaintiffs' amended complaint, and that after hearing said application the said Board of Adjustment made and entered its Finding of Fact, Conclusions of Law and Order in the premises, a copy of which said Findings of Fact, Conclusions of Law and Order is hereunto attached and marked Exhibit 'A,' " etc.

The answer does not show that any appeal was taken from the decision of the board of adjustment. Section 15-8-104, R. S. Utah 1933, provides:

"The city or any person aggrieved by any decision of the board of adjustment or zoning commission may have and maintain a plenary action for relief therefrom in any court of competent jurisdiction."

Where opportunity is given for the courts to pass upon such a question by direct appeal from the decision of an administrative officer or body, such procedure must be pursued. *Palmolive Co.* v. *Conway* (D. C.) 37 F. (2d) 114. It seems from a reading of title 15, c. 8, art. 3 (sections 15-8-89 to 15-8-107), R. S. 1933, that the board

of adjustment does not have authority itself to rezone. Its functions are limited to making adjustments under the ordinances in order that they will not be as the law of the Medes and Persians. Its powers are what they purport to be—limited to relief of cases where owners would suffer special hardships by the ordinance, and to make the ordinance pliable enough so as not to militate against the public welfare. Consequently, the claim of defendants that the zoning itself was arbitrary and unreasonable possibly could not be reached by the channel through the board of adjustment. But there must be some method for applying to a zoning board (mention is made of one in section 825 of the Provo City ordinances) or to the city commission for a change of the nature of the district. Section 15-8-93, R. S. 1933, provides in part:

"Such regulations, restrictions and boundaries may from time to time be amended, supplemented, changed, modified or repealed."

Doubtless the Claudins would not have been interested in protesting the classification at the time of the public hearings unless at that time they desired to establish a mortuary in the district. But if later, when they were desirous of so doing and they conceived that the ordinance is in itself unfair in the manner specified, to wit, that the Class "B" District really includes territory which was at the time of the passage of the ordinance commercial in character or since has become so, they should have called the attention of the city commission or zoning commission, whichever body is the one to whom an applicant should first apply, to the matter and obtained a ruling from such body, and then from that ruling, if adverse, have taken an appeal to the courts. Certainly the incorrect procedure is to remodel the structure for a purpose prohibited in the zone by the ordinance and then, as a defense to an injunction suit, hit the city with the plea of an unfair ordinance. The court need not consider such matters in issue until they have been tried administratively, especially where there are channels

from administrative rulings to the courts. We therefore conclude that the allegation above designed as (a) did not raise an issue. It does not constitute a defense to this action.

Defendants contend that there were denials in their answer to facts alleged in the complaint which were sufficient to withstand a demurrer to the answer. If these denials raised issues as to facts necessary to prove in order to establish the cause of action, defendants are correct. But an answer which only denies matters pleaded in the complaint by way of inducement not necessary to be proved in order to establish the cause of action does not raise essential issues and is demurrable. We have examined the allegations of the amended complaint and the denials of these allegations contained in the second amended answer, and we find that the denial of the allegation of the passage and effectiveness of the ordinance was on lack of knowledge or information sufficient to form a belief as to the same. The matter of whether the ordinance was actually passed on April 30, 1930, was a matter of public record; the matter of whether it was at the times alleged in the complaint an existing ordinance was information equally available to the defendants; the allegation that it was a valid ordinance was a conclusion of law which was not required to be denied. It was an issue of law which was raised by the demurrer to the amended complaint. It was held in *First Savings Bank of Ogden* v. *Brown,* 88 Utah 294, 54 P. (2d) 237, 241:

"It is well settled, therefore, that those facts may not be denied on information and belief which are either actually or presumptively within the knowledge of the defendant, or which are of such a character as to be accessible to the defendant for his information. Denials of such matters must be positive in form in order to raise an issue and put the plaintiff to his proof"—citing cases.

While we think the rule that matters actually or presumed to be within the knowledge of defendant or which are accessible to defendant for his information cannot be denied

on lack of formation and belief is a wholesome one because of the policy of the law to reduce the issues in a case to those vital and necessary, yet the rule may need certain qualifications. For instance, in a case where the record is at a distance and it would cost considerable time and some money for the defendant to verify such record, he might put the plaintiff on his proof. And, even in cases where the information is presumptively in possession of the defendant, he should be permitted to show that actually it was not. Thus, an allegation that personal service was had on a defendant where suit is on a judgment in a foreign state, presumptively the defendant should know that, but, if the service has been on some other person "at his usual place of abode" while it was claimed he was living in such jurisdiction and the summons had never been given to him, he might demand proof on lack of sufficient knowledge to form a belief. However, in such instances the answer should show the reasons why the presumed knowledge is not really possessed or why it is difficult to get access to the public or otherwise accessible record. In this case the parties both lived in the same city. There appears no reason why defendant could not check up the allegation of passage of the ordinance and its continued existence. The other denials in the nonaffirmative part of the answer are either as to allegations which could be elicited from public records or as to legal effects flowing from fact allegations or which deny immaterial matters or in regard to which a denial is vitiated by contradictory admissions elsewhere in the answer. We find no error in sustaining the demurrer to the second amended answer.

But was the default of defendants because of failure to amend within ten days from the date of the ruling "without notice" proper? It is contended that section 104-14-8, R. S. 1933, requires notice in order to make the time run. The section reads:

"When a demurrer to any pleading is sustained or overruled and time to amend, answer or reply is given, the time so given runs from

service of notice of the decision or order, except when the party against whom the decision is made, or his attorney, is present and asks for and is given time to amend, answer or reply; in which case no notice of the decision is required."

It must be noted that the court may, upon sustaining a demurrer, refuse to permit an amendment to a pleading if it deems no amendment can be made which will circumvent the ruling. The implications of section 104-14-3 so speak. In such case, the pleader is virtually out of court. It is as if the court had said, "Your pleading is not good in law and, under the facts as I apprehend they can be pleaded, you cannot state a good action or defense in law." Naturally, it is not usually done on a first complaint or answer because the court cannot ordinarily know that other facts to make the pleading good cannot be pleaded. And a refusal to permit pleading over where it does not appear positive that no cause of action or defense can be pleaded may run easily into an abuse of discretion. But the power not to permit amendments is in the court after the trial of the issue of law. This being true, it follows that the court may do the lesser thing included in the greater, i. e., give time to amend without notice, provided both counsel are present in the courtroom at the time the ruling is made. Section 104-14-8 must be construed to mean, "When time to amend the answer or reply is given, the time so given runs from service of the notice of the decision or order [when the court does not otherwise specify]," the bracketed part being the part which must be read in in order to harmonize with the other powers given and implied by the statutes in the courts. Another instance when time does not begin to run from the notice, but from the date of the ruling is, "when the party against whom the decision is made, or his attorney, is present and asks for and is given time to amend, answer or reply." Naturally, if the attorney for the party against whom the decision was made was not present in court at the time of the ruling and the court gave a time "without notice," it might be an abuse of discre-

tion, because time to amend with no way of knowing that the attorney would be notified of such time would be senseless. But, when counsel are present in court and the court specifies time to amend, answer, or reply, when the same is not allowed as a matter of course, but discretionary, the discretion may include the fixing of a time without notice. The case suggested in section 104-14-8, where notice need not be given because counsel asks for and is given time to amend, answer, or reply, suggests an equivalent to the cases mentioned in section 104-14-4, where the court "may likewise, in its discretion, after notice to the adverse party, allow upon such terms as may be just an amendment to any pleading or proceeding in other particulars." The last part of section 104-14-8 was to allow, after argument and revealed necessity for an amendment, just what such party who suffered the adverse decision could have done under section 104-14-4. This part of section 104-14-8 was not meant to impede or interfere with the power of the court to include in its allowance of time to amend, answer, or reply a provision that such time should run without notice when counsel for the party against whom the ruling was made was present in the courtroom representing his client in the matter.

Thus, it appears that the defendants were under obligation to amend within ten days from the date of the ruling without being notified, or suffer default. Therefore there was no error in granting judgment after the ten days had run and defendants were in default of a further amended answer.

We think this disposes of all the points raised on the appeal. The judgment is affirmed and respondents are awarded costs.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.