Welby J. VAN DYKE, Plaintiff
and Appellee,

v.

Marion Glen CHAPPELL and Deama
Ruth Chappell, Defendants and
Appellants.

No. 890133.

Supreme Court of Utah.

Oct. 2, 1991.

Tex R. Olsen, Richfield, for Van Dyke.

Marcus Taylor, Richfield, for the Chappells.

ZIMMERMAN, Justice:

Plaintiff Welby J. Van Dyke filed suit against defendants Marion Glen and Deama Ruth Chappell seeking to quiet title to property in Wayne County, Utah, on the theory of boundary by acquiescence. After a nonjury trial, the court entered an order quieting title in Van Dyke. The trial court found that Van Dyke owned the property in question, based on the theory that a fence line which divided the adjoining parcels of land established a boundary by acquiescence. The Chappells appeal, arguing that (i) the court improperly found that the parties intended the fence to be a boundary line when it actually served only as a barrier for livestock, and (ii) there was insufficient evidence as to one of the elements

needed to establish a boundary by acquiescence, to wit, objective uncertainty as to the boundary's location. We affirm the trial court's determination that there was sufficient evidence to establish that the fence was a boundary. We also hold that there was no need to establish the element of objective uncertainty, and therefore, we have no occasion to address the sufficiency of the evidence on this point.

The trial court's determination as to the applicable law is reviewed for correctness. *See, e.g., Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc.*, 789 P.2d 24, 25 (Utah 1990); *State ex rel. Division of Consumer Protection v. Rio Vista Oil, Ltd.*, 786 P.2d 1343, 1347 (Utah 1990); *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985). The factual determinations of the trial court will not be disturbed unless they are clearly erroneous. *See, e.g., Grayson Roper Ltd. Partnership v. Finlinson*, 782 P.2d 467, 470 (Utah 1989); *Copper State Leasing Co. v. Blacker Appliance & Furniture Co.*, 770 P.2d 88, 93 (Utah 1989); *Porter v. Groover*, 734 P.2d 464, 465 (Utah 1988). In making such a determination, we consider the evidence in a light most favorable to the trial court. We recite the facts in accordance with that standard. *See, e.g., State v. Verde*, 770 P.2d 116, 117 (Utah 1989).

Van Dyke and the Chappells own adjacent parcels of land in Lyman, Wayne County, Utah. The alleged boundary between the parcels is a fence that has been in the same place since approximately 1911. At trial, Van Dyke asserted that this fence line, constructed by the predecessors in interest of both parties, is the boundary. In support of this claim, he relied on the facts that the parties and the community as a whole have treated the fence line as the boundary for a long period of time, that a survey of the area was made in 1966 and was based, at least in part, on the fence line's being the boundary between Van Dyke and the Chappells, and that the fence line is aligned with other fences that run across the entire valley. The Chappells, on the other hand, claimed that the fence runs across the north end of their property and deprives them of the use of nearly one-half

an acre of land. The Chappells relied on the record of title and on surveys that were done in 1876, 1935, and 1966. In the early 1980s, the Chappells asserted for the first time that the fence ran across their property. A survey done in 1987 confirmed that the fence line was on the Chappells' land.

After trial, the court quieted title in Van Dyke. In reaching this conclusion, the court applied the boundary-by-acquiescence test set forth in *Halladay v. Cluff*, 685 P.2d 500 (Utah 1984), which requires, inter alia, that the parties intended the fence to be the boundary and that there was objective uncertainty as to where the correct boundary was located. The Chappells appeal, arguing that the evidence was insufficient to establish these two parts of the test.

We agree that the trial court reached the proper result in this case. However, we disagree with the trial court's articulation of the elements of boundary by acquiescence. At the 1989 trial, the court based its determination of the law on *Halladay*, which we overruled one year later in *Staker v. Ainsworth*, 785 P.2d 417 (Utah 1990). In the present case, we affirm *Staker* and hold that it is unnecessary for Van Dyke to show objective uncertainty as to the boundary. Applying this revised boundary-by-acquiescence test, we affirm the trial court's judgment because we find sufficient evidence to support the trial court's conclusion that the fence was intended as a boundary line.

■ We have decided a number of cases in recent years regarding the doctrine of boundary by acquiescence. *E.g., Judd Family Ltd. Partnership v. Hutchings*, 797 P.2d 1088 (Utah 1990); *Staker v. Ainsworth*, 785 P.2d 417 (Utah 1990); *Halladay v. Cluff*, 685 P.2d 500 (Utah 1984). In *Halladay*, we held that before one could establish title to property via boundary by acquiescence, there must be a finding that the location of the correct boundary could not be objectively ascertained, i.e., that its location was "objectively uncertain." In *Staker*, we overruled *Halladay* and held

that objective uncertainty was not an element of boundary by acquiescence.[1]

In *Judd Family*, by way of language unnecessary to the result, we addressed the question of whether the *Staker* test should be applied retrospectively.[2] We stated that we would apply the *Halladay* standard to cases decided by trial courts after *Halladay* but before *Staker*. In effect, we said that the *Staker* decision should be applied prospectively only. However, we now recognize that in so stating the law, we did not examine carefully the basis for that decision. Upon further consideration, we now conclude that we erred in *Judd Family* to the extent that we indicated *Staker* would be applied prospectively only. We reach this result based on an examination of the general rule concerning retrospective application of judicially created law and the policy considerations at stake in this case.

■ When a judicial decision decisively changes the common law, the changed law generally applies retrospectively. *See* Annotation, *Prospective or Retroactive Operation of Overruling Decision*, 10 A.L.R.3d 1371, § 4 (1966). However, the modern view is that the retroactive operation of a change in the common law is not invariable and is not a question of judicial power; rather, whether a decision will operate prospectively should depend solely upon an appraisal of the relevant judicial policies to be advanced. *See Malan v. Lewis*, 693 P.2d 661, 676 (Utah 1984) (on petition for rehearing); *Loyal Order of Moose, # 259 v. County Bd.*, 657 P.2d 257, 264 (Utah 1982). In making this determination, we look to the impact retroactive application would have on those affected. *Id.* When we conclude that there has been justifiable reliance on the prior state of the law or that the retroactive operation of the new law

may otherwise create an undue burden, the court may order that a decision apply only prospectively. *See Loyal Order of Moose*, 657 P.2d at 265; *State Farm Mutual Ins. Co. v. Farmers Ins. Exch.*, 27 Utah 2d 166, 168–69, 493 P.2d 1002, 1003 (1972).

■ To determine if there is justification for ruling that the *Staker* boundary-by-acquiescence test should not follow the ordinary course and be applied retrospectively, we must review both the question of justifiable reliance on *Halladay* and whether some other undue burden would result from retroactive application of *Staker*. Absent some such reason, *Staker* should apply retroactively.

In the past, this court has applied changed common law prospectively in cases where retrospective application would upset the expectations of those who have relied on the former law. For example, we have applied changed law only prospectively in cases where parties have planned tax strategy based on prior law, *Loyal Order of Moose*, 657 P.2d at 265, or where a city has prepared its budget based on mill levies and tax collection figures based on a prior tax scheme, *Rio Algom Corp. v. San Juan County*, 681 P.2d 184, 195–96 (Utah 1984), or where water district boards have planned and conducted their activities in good faith reliance on prior judicial decisions concerning board composition. *Timpanogos Planning & Water Management Agency v. Central Utah Water Conservancy Dist.*, 690 P.2d 562, 572 (Utah 1984); *see also Malan*, 693 P.2d at 675–77.

We find no analogue in the present situation. First, the *Halladay* requirement of objective uncertainty existed for fewer than ten years in Utah. Given the other elements required to show boundary by acquiescence, including long acquiescence in the boundary marked, it seems quite

---

1. The requirements for boundary by acquiescence are as follows:
   (1) [O]ccupation up to a visible line marked by monuments, fences, or buildings, (2) mutual acquiescence in the line as a boundary, (3) for a long period of time, (4) by adjoining landowners.
   *Staker*, 785 P.2d at 420 (quoting *Goodman v. Wilkinson*, 629 P.2d 447, 448 (Utah 1981)).

2. Had we applied the *Staker* analysis to the facts in *Judd Family*, the outcome would have been the same because in *Judd Family*, we affirmed the trial court's holding that boundary by acquiescence had been established and found sufficient evidence to support the finding of objective uncertainty. *See Judd Family*, 797 P.2d at 1090.

unlikely that anyone could have cause to rely on the *Halladay* requirement of objective uncertainty for establishing a title over the short life of that requirement. Moreover, the notion of boundary by acquiescence as a default mode of fixing title almost precludes active reliance or changes of position based on *Halladay*. Whether or not there is an objective uncertainty is a fact. The parties do not, nor can they, take action that will change this or any of the other facts underlying the elements of the boundary-by-acquiescence determination.

We also find no reason to believe that the retroactive application of *Staker* imposes some other undue burden. The change in the pre–*Staker* law eliminates a need to show objective uncertainty. Although it might be argued that this makes it easier for one relying on this doctrine, such as Van Dyke, to be granted title to property, thereby increasing the burden of defending against such a claim, we find little merit to the claim that such an impact warrants only prospective application of a decision. If such an approach were followed, any decision that modified in any way a previously articulated legal standard would have to be prospective only, making prospective application the rule rather than the exception.

We conclude that the burden imposed by retroactive application of *Staker* is de minimus. Accordingly, we hold that *Halladay*

has no further vitality and that all cases shall be governed by the rule of *Staker v. Ainsworth*.

■ Turning to the present case, the trial judge, hearing this case before *Staker*, followed *Halladay* and required a showing of objective uncertainty. He also found that the other requirements of boundary by acquiescence were satisfied. Since we have concluded that *Staker* is to be applied retroactively, we have no need to address the correctness of the trial court's finding on objective uncertainty. If the other elements are adequately proven, the result reached by the trial court should be affirmed.

With the objective-uncertainty issue eliminated, the only question remaining is the sufficiency of the evidence to support the trial court's finding that the parties or their predecessors acquiesced in the fence as a boundary for the requisite period of time. We will not disturb the trial court's factual determination on that issue unless it is clearly erroneous. *See, e.g., Grayson Roper*, 782 P.2d at 470; *Copper State Leasing Co.*, 770 P.2d at 93; *Porter*, 734 P.2d at 465.

Although the Chappells presented evidence that the original intent of the parties erecting the fence was to create only a barrier to the passage of cattle, that evidence was far from conclusive.[3] We con-

---

**3.** For example, the testimony of Glen Chappell, defendant's father, shows that he was unclear whether the fence line was intended to be a boundary line or a barrier for livestock:

Q: What was your purpose in building the fence [in 1911]?
A: To protect what we was planting in that piece of property.
Q: And what were you protecting the property from?
A: It was open country to the north and east a long ways around there, and there's livestock out on the public domain and around that could get into it.
. . . .
Q: So you built the fence to keep the livestock out?
A: Just built the fence to keep the livestock out. And it could be anybody's livestock could be running and ranging out through there. They used to turn their milk cows out in the hills and out around the canals and around, and we fenced it.

. . . .
Q: So those fences that go on east went on the same alignment?
A: Went on about the same alignment. Just like the old farmers always done things. They stepped it off and eyeballed it and put up the fence.
Q: They did the best they could, couldn't they?
A: They didn't have any [surveyors] or anything to find out.
Q: Now the land wasn't worth surveying in those days?
A: It wasn't then, and it still ain't.
Q: And so the farmers would get together and set their fence lines?
A: Some of them would.
Q: Now isn't that what your dad and Ben Turner did?
A: I don't know what they done. I was too small to know what they done. But I do know they worked together and made the fence.

clude that the evidence taken as a whole was such that the judge could have found from the Chappells' evidence that the fence was built as a livestock barrier, a boundary line, or both. Obviously, it is difficult to demonstrate conclusively the intent of parties long since dead from testimony of people who were only children at the time the fence was built.

On the other hand, there was ample evidence that the parties involved in the dispute and their predecessors recognized, at least until the early 1980s, that the fence was the boundary. This evidence came from Welby Van Dyke, who testified that the Chappells had asked permission to build a pony corral on that portion of the land that was within Van Dyke's fence line. Van Dyke also testified that when he asked the Chappells to remove the corral and a shed that they had built on the disputed property, the Chappells removed the structures. There was also evidence that the Chappells attempted to purchase the property. This testimony alone, if the trial judge believed it, was sufficient to support the conclusion that the Chappells understood that the property in question belonged to Van Dyke and that the fence line was the boundary. Additional evidence that provides further support for the finding that the fence was intended as a boundary consisted of the fact that the fence was in line with the rest of the fences that ran across the valley.

We conclude that there was sufficient evidence to support the trial court's finding that all of the elements required by *Staker* for boundary by acquiescence have been met. Therefore, we affirm the judgment quieting title in Van Dyke.

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur.

STEWART, J., concurs in the result.